UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JULLIAN WILLIAMS,**

    Petitioner,

v.                                                        Case No. 8:22-cv-1456-MSS-SPF
                                                         Case No.: 8:20-cr-73-MSS-SPF

**UNITED STATES OF AMERICA,**

    Respondent.
_____/

**ORDER**

Petitioner Jullian Williams moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Civ. Doc. 1) Williams pleaded guilty to charges stemming from his operation of a national marijuana distribution business and received a sentence of 96 months, which is well below the 210 to 262- month guideline range applicable to his offense. He challenges his convictions and sentence on the grounds that he received constitutionally ineffective assistance of counsel. Williams is entitled to no relief.

**I.    Background**

For at least four years, Williams operated a national marijuana distribution business known as La Cosa Nostra, LLC, that generated over $1,000,000 in revenue and distributed over 1,000 kilograms of marijuana. Williams and others distributed marijuana and bulk currency by car, through the mail, and on commercial flights from California and Colorado to Florida. (Crim. Doc. 47 at 18; Crim. Doc. 176 at ¶¶ 18–36)

Williams pleaded guilty under a plea agreement to a Superseding Indictment that charged him with conspiring to possess marijuana with the intent to distribute it, in violation

of 21 U.S.C. § 846 and 841(b)(1)(D) (Count One); conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h) (Count Two); possessing marijuana with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2 (Count Five); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Six). (Crim. Doc. 47 at 1–2; Crim. Doc. 184) Under the plea agreement, the United States agreed to dismiss Counts Three and Four, which charged Williams with a second count of possessing marijuana with the intent to distribute it and a second count of possessing a firearm in furtherance of a drug trafficking crime, respectively. (Crim. Doc. 47 at 4)

Williams's total offense level of 37 and his criminal history category of I produced an advisory guidelines range of 210 to 262 months. (Crim. Doc. 176 at ¶ 102) At sentencing, Williams lodged no objection to the factual accuracy of the presentence report. (Crim. Doc. 276 at 5–6). The district court overruled Williams's objection to a role enhancement and adopted the presentence report without change. (*Id*. at 5–10, 45) Citing Williams's age, community ties, lack of criminal history, and allocution, the district court varied downward from the guidelines range and sentenced him to 96 months' imprisonment. (*Id*. at 43; Crim. Docs. 184 and 185) Williams filed no appeal.

Instead, Williams filed a § 2255 motion in which he argues that counsel was constitutionally ineffective (1) for not seeking to suppress evidence obtained in violation of his Fourth Amendment rights, (2) for conducting an inadequate pretrial investigation, and (3) for coercing him to plead guilty. Williams claims he is entitled to a vacatur of his convictions and sentence.

2

**II.      Discussion**

To succeed on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating performance, the district court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) (citations omitted).

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).  "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted).

A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability

3

sufficient to undermine confidence in the outcome." *Id.* Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### A. Ground One: Failure to File Pretrial Motions to Suppress

Williams claims that counsel was ineffective for not seeking to suppress evidence that was obtained in violation of his Fourth Amendment rights. (Civ. Doc. 1 at 4; Civ. Doc. 1-1 at 3–12) He lists seven searches of his apartment, storage unit, vehicle, safety deposit box, townhouse, and cell phone, which he argues the United States lacked sufficient probable cause to conduct. He argues that counsel "never once took [him] seriously when [he] asked that we file such motions [to suppress]" and instead "rushed [him] to sign a plea agreement in 6 short months without investigating these issues." (Civ. Doc. 1-1 at 17)

Williams waived this claim by pleading guilty. It is well established that a knowing and voluntary guilty plea waives a pre-plea ineffective assistance of counsel claim in a § 2255 proceeding. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). A guilty plea also prevents a defendant from challenging the constitutionality of "case-related government conduct that takes place before the plea is entered." *Class v. United States*, 583 U.S. 174, 182 (2018) (citing *Haring v. Prosise*, 462 U.S. 306, 320 (1983) (holding that a valid guilty plea "results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment"). Thus, once a defendant enters a knowing and voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of

4

constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

At the plea hearing, Williams specifically acknowledged his understanding of this waiver. The magistrate judge asked explained, "if you have any objection to the evidence and how it was obtained in your case or how the prosecution was started or commenced, by pleading guilty you're giving up your right to make those defenses and objections." (Crim. Doc. 275 at 32) Williams confirmed that he understood this waiver and that he had no "questions about the consequences of [his] guilty plea or the rights [he was] giving up." (*Id.* at 32 and 52) A defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In fact, in his § 2255 motion, Williams "recognize[s] that [he] said certain things during the plea hearing . . . even though [he] knew that the searches and seizures in this case had to be unlawful." (Civ. Doc. 1-1 at 18)

And, even if Williams had not waived this claim, it lacks merit. A defendant can establish ineffective assistance of counsel by showing that counsel unreasonably failed to move to suppress evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To prevail on such a claim, "the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375; *see also Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006). "If a search was constitutional, then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a

defendant is not prejudiced by counsel's failure to do so." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2006).

The record shows that law enforcement conducted a warrantless security sweep of Williams's apartment on August 22, 2019, while responding to a 911 call that reported an active shooter incident. (Crim. Doc. 91 at ¶ 28) That search was no more intrusive than necessary to ensure officer safety. Later that same date, on the basis of items observed in plain view during the safety sweep, law enforcement obtained a warrant to search Williams's apartment and discovered "a vacuum sealer, drug packaging items, a money counter, dozens of money bands in high currency value denominations, handwritten drug ledgers, hand written receipts for $20,000 to $40,000 USD in drug sales, bank records, business records for La Cosa Nostra, LLC, a safe deposit box key, 13 pieces of luggage tagged in Williams's name with the zippers glued shut, and two firearms." (*Id*.) Thereafter, law enforcement obtained and executed additional search warrants of Williams's storage unit, safety deposit box, townhouse, and cell phone, and seized cash that was intended to facilitate the conspiracy and various pieces of drug paraphernalia. (*Id*. at ¶¶ 27–32)

According to Williams, the security sweep of his apartment was illegal because it was conducted "without consent and against the wishes of [his cousin] and his girlfriend[,]" who were present at the time. (Civ. Doc. 1-1 at 4) Because the security sweep of his apartment was illegal, he argues, the warrants that law enforcement subsequently obtained to search his apartment, storage unit, safety deposit box, townhouse, and cell phone were also illegal. (*Id*. at 4–8) He believes that the "evidence seen in plain view during the security sweep should never have been used in subsequent search warrants to establish probable cause for those searches." (*Id*. at 4) He argues, "had the TPD not unlawfully entered [his apartment to

conduct the security sweep], [law enforcement] would not have known that [he] existed, much less that [he] should be targeted for additional searches and investigatory activity based on that security sweep." (*Id.*)

Williams fails to show that a Fourth Amendment violation occurred. He acknowledges that law enforcement was present at his apartment because a witness called 911 after an incident in which multiple shots were fired. (*Id.* at 3–4) "A protective [security] sweep may be undertaken 'without an arrest warrant, so long as the officers are lawfully within the premises due to, for example, the existence of exigent circumstances[,]" such as "situations involving 'danger of flight or escape, loss or destruction of evidence, [or] risk of harm to the public or the police[.]'" *United States v. Dabrezil*, 603 F. App'x 756, 758–59 (11th Cir. 2015) (quoting *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002)). And, "[i]f there is sufficient justification, a properly limited protective sweep may occur 'in connection with an in-home arrest." *United States v. Norman*, 638 F. App'x 934, 937 (11th Cir. 2016) (recognizing that "the scope of a protective sweep [has been expanded] to situations in which a defendant was arrested in a 'portion of a structure' outside the residence"). Williams acknowledges that the security sweep of his apartment was conducted when (1) law enforcement responded to a reported shootout involving risk of harm to the public or police and (2) placed his cousin under arrest. Therefore, he fails to show that the warrantless security sweep of his apartment or the search warrants subsequently obtained to search his apartment, storage unit, safety deposit box, townhouse, and cell phone, violated his Fourth Amendment rights.

In her responsive affidavit, counsel avers that she "reviewed the discovery in Mr. Williams case, to include the search warrants, and reviewed controlling case law[,]" and she "did not have a good faith basis to file motions to suppress the search warrants issued, the

7

sweep of Mr. Williams's apartment, or the traffic stop of his vehicle." (Civ. Doc. 9-1 at 2) Williams fails to offer a valid legal basis under which counsel could have moved to suppress the evidence he believes was illegally obtained. Accordingly, because Williams has not shown that a Fourth Amendment violation occurred, he cannot show counsel was constitutionally ineffective for not lodging a meritless challenge to the searches of his apartment, storage unit, vehicle, safety deposit box, townhouse, and cell phone. *See Hollis v. United States*, 958 F.3d 1120, 1124 (11th Cir. 2020) (explaining that counsel is not constitutionally ineffective for not raising a meritless claim); *see also Smith v. United States*, No. 16-14111-E, 2017 WL 2819723, at *3 (11th Cir. Jan. 9, 2017) ("Because a motion to suppress the fruits of these searches would not have succeeded, counsel was not ineffective for failing to file it.").

Similarly, Williams fails to show that a Fourth Amendment violation occurred when law enforcement stopped and searched his vehicle on October 13, 2019. He vaguely complains that the stop "was a pretextual stop under the guise of a traffic stop, and . . . was unlawful under the Fourth Amendment to the Constitution." (Civ. Doc. 1-1 at 7) However, Williams fails to identify the reason he believes the traffic stop was illegal, and he fails to offer a valid legal basis under which counsel could have sought to suppress evidence obtained during the stop. A movant is not entitled to relief when his claim is merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1992); *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining that a defendant must allege "reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

### B. Ground Two: Failure to Conduct Adequate Pretrial Investigation

Williams claims that counsel was ineffective for not investigating critical issues in his defense, including (1) the false information that was attributed to him based on a proffer conference, (2) police recordings obtained during a traffic stop, and (3) witnesses from his apartment complex.

Counsel's duty to conduct a pretrial investigation is governed by a reasonableness standard. *Mitchell v. Kemp*, 762 F.2d 886, 888–89 (11th Cir. 1985). Counsel must perform a "reasonable" investigation or make a "reasonable" decision that such an investigation is not warranted. *Id*. at 888. Counsel's decisions regarding the level of investigation warranted must be viewed with a strong presumption of reasonableness at the time the decision regarding investigation was made, not with the benefit of hindsight. *Strickland*, 466 U.S. at 689. No absolute duty exists to investigate particular facts or a certain line of defense. *Chandler*, 218 F.3d at 1317.

#### 1. Proffer Conference

Williams claims that a proffer report, which was based on a December 2019 proffer conference attended by Williams, his counsel, the United States, and law enforcement, contained "false" information, "i.e., not what [Williams] said at the conference." (Civ. Doc. 1-1 at 10) He believes that "the false proffer information was used against [him] by the government" and the false information was "one of the reasons [he] did not proceed to trial." (*Id*.) He argues that counsel was ineffective for not challenging, or suppressing, the false information attributed to him in the proffer report. (*Id*.) In her responsive affidavit, counsel avers that she reviewed the discovery, "the circumstances of Mr. Williams's December 2019

9

proffer," and the applicable case law, and determined that she lacked a "good faith basis to file a motion to suppress" the proffer report. (Civ. Doc. 9-1 at 2)

Williams waived this claim by pleading guilty. *See Wilson*, 962 F.2d at 997. And, even if the claim was preserved, it fails because it lacks specificity. Williams claims that the proffer report was "altered from [his] original statements" and law enforcement's "interpretation of what [he] said [was] not what [he] actually said." (Civ. Doc. 1-1 at 10) However, Williams neglects to identify the inculpatory statements in the report that he believes to be false or altered. He neglects to explain how the false statements were used against him, and he neglects to explain how any (unidentified) false statement affected his decision to plead guilty.

It is well established that *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers."[1] *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, "we cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Shell v. United States*, No. 22-10973, 2023 WL 3338631, at *1 (11th Cir. May 10, 2023) (quotation omitted). "Conclusory allegations of ineffective assistance are insufficient." *Wilson*, 962 F.2d at 998. Williams's generalized allegations are insufficient to show counsel's decision not to seek to suppress the proffer report was unreasonable.

This claim fails for the additional reason that Williams fails to show that he was prejudiced by counsel's performance. To show prejudice when a defendant challenges his guilty plea based on ineffective assistance of counsel, he must show a reasonable probability

---

[1] Williams initiated this action *pro se* by filing a § 2255 motion. (Civ. Doc. 1) After the United States responded to the motion, retained counsel appeared in this action and filed a reply on Williams's behalf. (Civ. Docs. 10 and 11) As directed by the district court, the United States filed supplemental briefing, and retained counsel filed a supplemental reply. (Civ. Doc. 22) Like Williams's *pro se* § 2255 motion, the counseled reply and supplemental reply (Civ. Docs. 11 and 22) neglect to identify false statements in the proffer report, to explain how the United States used the false statements against Williams, or to explain how any unidentified false statement affected his decision to plead guilty.

10

that but for the ineffective assistance, "he would not have pleaded [guilty] . . . and would have insisted on going to trial." *Durham v. Sec'y, Dep't of Corr.*, 834 F. App'x 843, 847 (11th Cir. 2020). Williams complains that counsel should have conducted an adequate pretrial investigation, sought suppression of evidence, and "negotiated for [him] to plead guilty with an 'escape hatch' to appeal these issues." (Civ. Doc. 1-1 at 18) But, he does not go so far as to claim that he would have proceeded to trial absent counsel's performance. Instead, in his counseled reply, Williams argues that because he had no prior criminal record, "it would have been objectively reasonable for him to proceed to trial, take the stand, profess his innocence, and let the jury assess his credibility and decide his fate." (Civ. Doc. 11 at 6)

However, his lack of prior criminal history is insufficient to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 US. 356, 372 (2010). The United States's evidence against Williams, as summarized in the factual basis supporting Williams's guilty plea, was substantial, and Williams admitted these facts without objection. (Crim. Doc. 47 at 18–24) Furthermore, he benefitted significantly by pleading guilty. Under the plea agreement, the United States agreed to move to dismiss Counts Three and Four from the Superseding Indictment and to recommend a three-point reduction to his offense level for acceptance of responsibility. (Crim. Doc. 47 at 4–5) Consequently, Williams fails to show that he was prejudiced by counsel's performance because he has not shown that a decision to reject the plea agreement would have been rational. *See McEarchen v. United States*, 859 F. App'x 880, 882 (11th Cir. 2021) (concluding that a decision to reject a plea bargain was not rational when the petitioner "accepted an advantageous plea arrangement . . . [which] eliminated the risk that he would

receive a sentence exceeding ten years because the government agreed to forgo charging him for other federal crimes").

In his counseled reply, Williams advances a related claim that counsel had a duty to advise him that the United States "could not use any statements attributed to him during his proffer against him at trial for any purpose," but he claims counsel either failed to so advise him or "affirmatively misadvise[d] him that the proffer statements could be used against him at trial." (Civ. Doc. 11 at 2, 4) And, in his counseled reply, Williams argues that, by not denying that counsel gave incorrect advice on this matter, the United States has conceded counsel's deficient performance. (Civ. Doc. 22 at 1–2)

This claim fails. The record is silent regarding the advice counsel gave Williams about whether the proffer statements could be used against him. (Civ. Doc. 20 at 6–9; Civ. Doc. 9-1 at 2) But, even if Williams is correct that he was not advised the statement could not be used against him, this claim nevertheless fails because Williams neglects to identify what he contends are the false statements attributed to him in the proffer, and, thus, he fails to show that he would have proceeded to trial had he known the unspecified statements could not be used against him.

### 2. Police Recordings during Traffic Stop and Arrest

Williams complains that counsel was ineffective for not investigating, or seeking to suppress, police recordings from his traffic stop and arrest on October 13, 2019. (Civ. Doc. 1-1 at 10–12) He claims that the transcripts of the police recordings contain "multiple inconsistencies" and that his *Miranda* rights were violated because law enforcement neglected to inform him he was under arrest and being recorded. Again, counsel avers that she lacked

a good faith basis to move to suppress recordings obtained during the traffic stop. (Civ. Doc. 9-1 at 2)

Williams waived this claim by pleading guilty. *See Wilson*, 962 F.2d at 997. And, even if the claim is not waived, it fails because it lacks specificity. Williams neglects to identify the portions of the recordings he believes should have been investigated (or suppressed) or to explain how it affected his decision to plead guilty. "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence," the petitioner must show that "the [undiscovered] evidence likely would have changed the outcome of a trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Therefore, he has not shown that counsel's decision not to pursue suppression of the recordings was unreasonable or prejudicial.

### 3. Witnesses from Apartment Complex

Williams complains that counsel was ineffective for not interviewing or investigating witnesses at his apartment complex regarding the shootout and subsequent search of his apartment on August 22, 2019. (Civ. Doc. 1-1 at 12–13) Williams pursued a civil action against the apartment complex for denying him access to his apartment after the search, and he believes counsel should have conferred with his civil attorney "so that information . . . and any other discoveries about this specific day could be shared." (*Id*. at 13) Counsel attests that "[she] spoke with Mr. Williams's civil attorney, Randall Reader, on June 24, 2020, and following that discussion as well as [her] review of the discovery in the case, [she] came to the conclusion, as discussed with Mr. Williams, that the specific Grady Square witnesses he wanted me to speak with had to do with his civil claim regarding access to his apartment." (Civ. Doc. 9 at 2)

13

Williams waived this claim by pleading guilty. *See Wilson*, 962 F.2d at 997. And, even if the claim is not waived, it fails because it is vague and speculative. Again, William neglects to identify the witnesses counsel should have investigated, the evidence or information that would have been discovered by such investigation, or how it affected his decision to plead guilty. He has not shown that counsel's decision not to investigate the apartment complex witnesses was unreasonable or prejudicial.

### C.   Ground Three: Counsel Coerced Williams to Plead Guilty

Williams claims he was coerced to plead guilty. According to Williams, counsel told him at the plea hearing (Civ. Doc. 1-1 at 14):

> [We are] not prepared to go to trial and there is too much evidence against you to even have a chance in trial[.] [F]urthermore[,] we will not be filing any motions to move to suppress evidence. If you don't take this plea deal your [sic] going to [expletive] everything up and if we go to trial your [sic] going to lose and frankly I don't want to see them (The Government) HANG A [expletive]!

Williams further claims that counsel threatened, "if you don't take this deal they (the government) will supersede and I will not be able to negotiate another deal for you." (*Id*. at 16) He argues that the United States's threat to file a second superseding indictment, combined with counsel's ineffectiveness,[2] coerced him into pleading guilty. (*Id*.)

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). However, a defendant's statement at

---

[2] To the extent that Williams claims that counsel's failure to seek suppression of incriminating evidence forced him to plead guilty, such claim fails. As discussed *supra* in section II.A., "an objectively reasonable defense lawyer would have recognized the obstacles to succeeding on a suppression motion and having the evidence excluded and could very well have offered [Williams] the same advice." *Spriggs v. United States*, No. 19-13238, 2022 WL 2345758, at *10 (11th Cir. June 29, 2022).

the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74; *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements under oath at a plea colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Williams's claim is refuted by his sworn statements at the plea hearing. The magistrate judge began the plea hearing with a clear instruction: "If at any time you decide you're unsure if this is what you want to do, let me know." (Crim. Doc. 275 at 5) Williams confirmed his understanding. (*Id*.) He further confirmed that he understood the charges against him and that he had sufficient time to meet with counsel "to decide what's best for [him]." (*Id*. at 11.) He confirmed that he was "fully satisfied with the advice and representation [counsel] has provided to [him]." (*Id*. at 12) He confirmed that he reviewed the plea agreement both in-person and over the phone with counsel, that he understood its terms, and had ample opportunity to ask counsel questions. (*Id*. at 13) He confirmed that, other than the promises contained in the plea agreement, no one had promised him anything to persuade him to plead guilty. (*Id*. at 22) Importantly, when asked if "anybody threatened [him] in any way to get [him] to plead guilty, either mentally or physically[,]" Williams responded, "no." (*Id*.)

When the United States recited the facts in support of each charge, Williams stated he did not have any objections but had "reservations." (*Id*. at 34–39) After some discussion about Williams's reservation, the magistrate judge confirmed that his "reservation" about the facts was "not a material disagreement." (*Id*. at 45) Next, at Williams's request, the magistrate judge permitted counsel to confer with Williams outside the courtroom. (*Id*. at 47)

15

When the two returned ten minutes later, Williams affirmed that he wanted to move forward with the guilty plea. (*Id*. at 48)  At the conclusion of the hearing, the magistrate judge found that Williams was pleading guilty knowingly, intelligently, voluntarily, and with the advice of counsel, and Williams never objected to this finding. (*Id*. at 53)

Finally, at the sentencing hearing, Williams made no attempt to withdraw his guilty plea. (Crim. Doc. 276)  He neglected to notify the district court during allocution of his belief that counsel had provided constitutionally ineffective assistance or that he had been coerced.

Other than his unsubstantiated claims of coercion, Williams offers no argument or evidence to disavow his sworn affirmations under oath that he was pleading guilty freely, voluntarily, and knowingly, and that no one coerced him to plead guilty.  He explicitly confirmed at the plea hearing that no one threatened him in any way and that he was pleading guilty because he was, in fact, guilty. (Crim. Doc. 275 at 53)  In his § 2255 motion, Williams even "recognize[s] that [he] said certain things during the plea hearing which indicates that [he] knew what [he] was doing, that [he] was not coerced, and that [he] had not been threated into signing." (Civ. Doc. 1-1 at 18)  Williams is entitled to no relief because he made specific assurances during both the plea and sentencing hearings that refute his current claim. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story about being [coerced] when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.).

And, accepting as true that Williams was threatened that (1) the United States would charge him with a second superseding indictment, and (2) he would lose at trial, such threats do not amount to coercion that invalidates the voluntary nature of the guilty plea.  The

16

pressure of an "exploding plea offer" does not constitute unlawful coercion. *Kelly v. United States*, 2010 WL 2991577, at *8 (M.D. Fla. July 27, 2010) (citing *United States v. Pickering*, 178 F.3d 1168, 1174 (11th Cir. 1999) ("If a prosecutor wishes to offer a defendant an 'exploding' plea bargain with a short fuse, . . . this decision is entirely within his or her prosecutorial discretion.")). Similarly, the threat of a second superseding indictment does not invalidate a guilty plea. *See Monsegue v. United States*, No. 17-13054-C, 2018 WL 6979305, at *3 (11th Cir. July 17, 2018)[3] (concluding that the United States's "threats of bond revocation and immediate incarceration if [the defendant] did not plead guilty and its statement that going to trial would be 'guaranteed to quadruple [his] time" did not invalidate the guilty plea) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (holding that confronting a defendant with the risk of more severe punishment is permissible)).

Finally, to establish prejudice in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Premo v. Moore*, 562 U.S. 115, 129 (2011). As explained *supra* in section II.B.1., the evidence against Williams was substantial and he benefitted significantly by pleading guilty. He cannot show that it would have been rational for him to reject the plea bargain and proceed to trial.

### III.    Conclusion

Accordingly, Williams's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment

---

[3] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.")

against Williams, to terminate any pending motions, to **CLOSE** this case, and to enter a copy of this order in the criminal action.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Williams is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Williams must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Williams has not shown that reasonable jurists would debate either the merits of the claims or the procedural issues. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Williams must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 17th day of December, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE